**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AYLA ERLER,
 *Plaintiff-Appellant*,

v.

YASHAR ERLER,
 *Defendant-Appellee.*

No. 14-15362

D.C. No.
3:12-cv-02793-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Submitted February 11, 2016[*]
San Francisco, California

Filed June 8, 2016

Before: Mary M. Schroeder and Jacqueline H. Nguyen,
Circuit Judges, and Lynn S. Adelman,[**] District Judge.

Opinion by Judge Adelman;
Dissent by Judge Schroeder

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY[***]

### Immigration Law

The panel vacated the district court's summary judgment in favor of the defendant in an action to enforce a sponsor's duty to provide financial support to an immigrant under an "I-864 Affidavit of Support."

The defendant, a United States citizen, married the plaintiff, a Turkish citizen, and signed an affidavit of support, making her eligible for admission to the United States. The defendant agreed to provide the plaintiff with any support necessary to maintain her at an income that was at least 125 percent of the Federal Poverty Guidelines for her household size. The affidavit became a contract between the defendant sponsor and the United States government for the benefit of the plaintiff and any entity that administers a means-tested public benefits program. The parties subsequently divorced, and their divorce judgment reflected their premarital agreement that neither would be entitled to alimony or support from the other.

Agreeing with the Seventh Circuit, the panel affirmed the district court's conclusion that despite the divorce, the defendant had a continuing obligation to support the plaintiff. The panel held, however, that the district court erred in treating the plaintiff and the adult son with whom she lived as a combined household for purposes of determining whether the defendant breached that obligation.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Schroeder wrote that the defendant was not required to pay support for his former wife, who was living in a household with income above the poverty level for its size.

## COUNSEL

David V. Sanker, Corey R. Houmand, and Melinda S. Riechert, Morgan, Lewis & Bockius LLP, Palo Alto, California, for Plaintiff-Appellant.

Yashar Erler, San Carlos, California, pro se Defendant-Appellee.

## OPINION

ADELMAN, District Judge:

This is an action to enforce a sponsor's duty to provide financial support to an immigrant under an "I-864 Affidavit of Support." *See* 8 U.S.C. § 1183a.

### I.

Ayla Erler is a Turkish citizen who immigrated to the United States in November 2008 to marry Yashar Erler.[1] Yashar, who is originally from Turkey, is a citizen of the United States. He is a real estate agent and owns several rental properties. His net worth exceeds $4.6 million.

---

[1] For clarity and simplicity, we will refer to the parties by their first names.

Ayla married Yashar on April 15, 2009.  A short time later, the couple began proceedings before the Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS") to ensure that Ayla could lawfully remain in the United States.  As part of this process, Yashar signed an "I-864 Affidavit of Support," in which he agreed to provide Ayla with "any support necessary to maintain [her] at an income that is at least 125 percent of the Federal Poverty Guidelines for [her] household size."  Yashar signed this affidavit because the Immigration and Nationality Act forbids admission to the United States of any alien who "is likely at any time to become a public charge."  8 U.S.C. § 1182(a)(4); 8 C.F.R. § 213a.2(a).  Persons who would be inadmissible for this reason may become admissible if a sponsor executes the affidavit of support.  8 U.S.C. § 1183a(a)(1); 8 U.S.C. § 1182(a)(4)(C)(ii); 8 C.F.R. § 213a.2.  Once executed, the affidavit becomes a contract between the sponsor and the U.S. Government for the benefit of the sponsored immigrant, and of any Federal, State, or local governmental agency or private entity that administers any "means-tested public benefits program."  8 C.F.R. § 213a.2(d); *see also* 8 U.S.C. § 1183a(a)(1) (providing that affidavit must be "executed by a sponsor of the alien as a contract").

On March 25, 2011, Ayla and Yashar separated.  Yashar subsequently initiated divorce proceedings in California state court.  The divorce was finalized on May 4, 2012.  Prior to their marriage, Ayla and Yashar had entered into a premarital agreement stating that neither party would be entitled to alimony or support from the other.  The judgment of divorce reflects this agreement.

Following her separation from Yashar, Ayla moved into an apartment with her adult son, Dogukan Solmaz. Ayla has not been able to find employment, and she contends that she has earned no income since her separation from Yashar. Dogukan earns an income of approximately $3,200 per month and uses his income to pay rent and other living expenses for both himself and Ayla. Dogukan's income exceeds 125% of the Federal poverty guidelines for a household of two.

Since their separation in March 2011, Yashar has refused to provide Ayla with any support. According to Ayla, Yashar made one payment of $3,500 to assist her with moving expenses in April 2011 but otherwise has not made any payments to her since their separation.

On May 31, 2012, Ayla commenced an action in the district court against Yashar to enforce his obligations under the affidavit of support. Yashar, who chose to proceed without counsel (and who appears without counsel on appeal), argued that the premarital agreement and divorce judgment terminated his obligations under the affidavit of support. Yashar also argued that because Dogukan has been supporting Ayla at a level that is not less than 125% of the Federal poverty guidelines for a two-person household, Yashar has not breached any obligation of support that might have survived the divorce.

The district court granted summary judgment to Yashar. *See Erler v. Erler*, No. CV-12-2793-CRB, 2013 WL 6139721 (N.D. Cal. Nov. 21, 2013). The court first determined that the premarital agreement and divorce judgment did not terminate Yashar's obligation under the affidavit of support. However, the court then determined that Yashar had not breached his continuing obligation to support Ayla because,

since the time of the separation, Dogukan had been maintaining Ayla at an annual income of at least 125% of the Federal poverty guidelines for a two-person household. Thus, reasoned the court, Yashar's duty to support Ayla had not been triggered.

Ayla appeals the district court's conclusion that Yashar did not breach the affidavit of support. She contends that the district court erred by including Dogukan and his income when calculating her household size and income. According to Ayla, the district court should have measured Yashar's support obligation based on a household size of one and should not have credited her with Dogukan's income.

On appeal, Yashar does not explicitly challenge the district court's conclusion that his support obligation survives the divorce. However, in his brief, he expresses some disagreement with that conclusion. Because Yashar is not represented by counsel, we will assume that he is seeking review of that conclusion and will briefly address it before turning to the question of whether he has breached the obligation of support.

II.

In the district court, Yashar argued that the parties' premarital agreement and the California divorce judgment terminated his obligation under the affidavit of support. However, the district court correctly rejected these arguments.

Under federal law, an affidavit of support remains enforceable until the sponsored immigrant: (1) becomes a citizen of the United States; (2) has worked or can be credited

with 40 qualifying quarters of work under title II of the Social Security Act; (3) ceases to be a lawful permanent resident and departs the United States; (4) obtains in a removal proceeding a grant of adjustment of status as relief from removal; or (5) dies. 8 C.F.R. § 213a.2(e)(2)(i); *see also* 8 U.S.C. § 1183a(a)(2)–(3). The I-864 Form that Yashar signed reproduces this information in a section entitled "When Will These Obligations End?" as follows:

> Your obligations under a Form I-864 will end if the person who becomes a permanent resident based on a Form I-864 that you signed:
>
> • Becomes a U.S. citizen;
>
> • Has worked, or can be credited with, 40 quarters of coverage under the Social Security Act;
>
> • No longer has lawful permanent residence status, and has departed the United States;
>
> • Becomes subject to removal, but applies for and obtains in removal proceedings a new grant of adjustment of status, based on a new affidavit of support, if one is required; or
>
> • Dies.

Just after the bullet points, the form states: "Note that divorce *does not* terminate your obligations under this Form I-864."

Thus, under federal law, neither a divorce judgment nor a premarital agreement may terminate an obligation of support. Rather, as the Seventh Circuit has recognized, "[t]he right of support conferred by federal law exists apart from whatever rights [a sponsored immigrant] might or might not have under [state] divorce law." *Liu v. Mund*, 686 F.3d 418, 419–20 (7th Cir. 2012). We therefore hold that the district court correctly determined that Yashar has a continuing obligation to support Ayla.

## III.

To determine whether the district court correctly found that Yashar has not breached his continuing obligation of support, we must decide what it means for a sponsor of an intending immigrant to provide the immigrant "with any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size" when the sponsored immigrant no longer resides in the sponsor's household. More specifically, the appeal requires us to decide how to measure the immigrant's post-separation household size and the immigrant's post-separation income.

Certain provisions of the Immigration and Nationality Act and the implementing regulations touch on these questions, but they do not clearly answer them. For example, the Act defines "Federal poverty line" as "the level of income equal to the official poverty line [as published by the Department of Health and Human Services] that is applicable to a family of the size involved." 8 U.S.C. § 1183a(h). However, the Act does not explain how to identify the "family of the size involved" when the sponsored immigrant no longer lives in the same household as the sponsor. Moreover, although

several provisions of the statutes and the regulations contain instructions for calculating the sponsor's income and household size for purposes of determining whether the sponsor has the means to support the intending immigrant, *see* 11 U.S.C. § 1183a(f)(6)(A)(iii); 8 C.F.R. § 213a.1 (defining "household income," "household size," and "income"); 8 C.F.R. § 213a.2(c)(2), there are no similar provisions for calculating the sponsored immigrant's income and household size for purposes of determining whether the sponsor has breached his or her duty to support the immigrant.

The district court recognized that the applicable statutes and regulations do not clearly explain how to determine a sponsored immigrant's post-separation household size and income. The court then looked to the purposes of the affidavit-of-support requirement and found that it must strike a balance between ensuring that the immigrant's income is sufficient to prevent her from becoming a public charge and preventing unjust enrichment to the immigrant. The court concluded that the proper balance under the facts of this case was to find that Dogukan and Ayla constituted a two-person household for purposes of the affidavit of support, and that their combined income must be used to determine whether Ayla's income was at least 125% of the poverty guidelines. The court reached this result by reasoning that because Dogukan was already providing Ayla with the support necessary to sustain her at 125% of the poverty guidelines, she would not become a public charge even if Yashar did not contribute any support. The court also reasoned that requiring Yashar to provide additional support under these circumstances would lead to Ayla's receiving "windfall benefits." *Erler*, 2013 WL 6139721, at *6.

The district court's approach is not without appeal. However, in our view, it leads to an untenable result. If a sponsor's duty under the affidavit of support is measured by the immigrant's post-separation household size and household income, then the sponsor would have to support all members of the immigrant's post-separation household in the event that the household's income fell below 125% of the poverty guidelines for a household of that size. For example, in this case, the district court determined that Yashar's duty of support must be based on a two-person household and that Ayla must be credited with Dogukan's income. But what if Dogukan lost his job and was unable to maintain the household at 125% of the poverty guidelines for a two-person household? Under the district court's approach, if Ayla continued to live in the same household as Dogukan but earned no income, then Yashar would be obligated to support both Ayla and Dogukan. That is, Yashar would be obligated to make enough payments to Ayla to bring her income above 125% of the poverty guidelines for a two-person household. Alternatively, assume that Ayla earned enough income to support herself at 125% of the poverty guidelines for a one-person household. In this circumstance, Yashar would not be obligated to provide Ayla with any support. But then assume that Ayla allows a family member who has no income to join her household. If Ayla's income were not sufficient to support a two-person household at 125% of the poverty guidelines, then under the district court's approach, Yashar would be required to make up the difference.

In our view, these results would be untenable because, in signing the affidavit of support, Yashar agreed to support only Ayla, not Ayla and anyone else with whom she might choose to live. The affidavit of support is a contract, *see* 8 U.S.C. § 1183a(a)(1); 8 C.F.R. § 213a.2(d), and contracts

are interpreted to give effect to the reasonable expectations of the parties, *see, e.g.*, 11 Williston on Contracts § 31:11 (4th ed. 2012). At the time a sponsor signs an affidavit of support for a single intending immigrant, he or she would reasonably expect that, if the immigrant separates from the sponsor's household, the obligation of support would be based on a household size of one. Or, if the sponsor agreed to sponsor multiple immigrants, such as a parent and child, then the sponsor would reasonably expect that, in the event of a separation, the obligation of support would be based on a household size that includes the total number of sponsored immigrants living in the household. The sponsor would not reasonably expect the obligation of support to be based on a household that includes the sponsored immigrant or immigrants *plus* anyone else with whom the immigrant might choose to live. Thus, in the event of a separation, the sponsor's duty of support must be based on a household size that is equivalent to the number of sponsored immigrants living in the household, not on the total number of people living in the household.

We recognize that our approach will sometimes lead to imperfect outcomes. As the district court noted, ignoring the income of others with whom the immigrant chooses to live will occasionally allow the immigrant to receive more support than required to prevent him or her from falling below 125% of the poverty line. However, while the immigrant may receive more support than required, the sponsor pays no more than what he or she should have expected to pay when signing the affidavit of support, *i.e.*, the amount required to support the immigrant in a one-person household. Thus, in this situation, the sponsor has no cause to complain about the immigrant's receiving a windfall.

In any event, relieving the sponsor of his duty of support when the immigrant is fortunate enough to find another person willing to provide the necessary support could itself be considered a windfall to the sponsor. Because the sponsor is not an intended beneficiary of the affidavit-of-support requirement, *Liu v. Mund*, 686 F.3d 418, 422 (7th Cir. 2012), we see no reason why the sponsor, rather than the immigrant, should receive the windfall. To the contrary, allowing the sponsor to receive the windfall would undermine the purpose of the affidavit of support, which is to "prevent the admission to the United States of any alien who 'is likely at any time to become a public charge.'" *Id.* (quoting 8 U.S.C. § 1182(a)(4)(A)). As the Seventh Circuit has recognized, that purpose is best served by interpreting the affidavit in a way that makes prospective sponsors more cautious about sponsoring immigrants. *Id.* Here, Yashar asks the court to adopt a rule allowing sponsors to escape their support obligations by withholding payments and waiting for charitable third parties to pick up the slack. Such a rule would make sponsors less cautious about sponsoring immigrants, and thus it would undermine the very purpose of the support requirement.[2]

We also recognize that, under our approach, there will be cases in which the immigrant will be left living in a

---

[2] The district court expressed concern that if an immigrant who received adequate support from others could nonetheless turn to the sponsor for support, then *the sponsor* might unnecessarily become a public charge. However, before admitting the immigrant based on the sponsor's affidavit of support, USCIS would have reviewed the sponsor's income to make sure that it was sufficient to support the immigrant. *See* 8 U.S.C. § 1183a(f)(1)(E); 8 C.F.R. § 213a.2(c)(2). So in most cases, enforcing the sponsor's support obligation will not result in the sponsor's becoming a public charge.

household that makes less than 125% of the poverty guidelines, even after the sponsor satisfies his or her support obligation. For example, if the immigrant chooses to live in a two-person household, measuring the sponsor's duty of support by a one-person household could result in the immigrant's total household income falling below 125% of the poverty guidelines. However, we conclude that this result coincides with the reasonable expectations of the parties to the affidavit of support. The sponsor would not reasonably expect to have to support the immigrant *and* any others with whom she chooses to live, and the immigrant would not reasonably expect to be entitled to such support. Likewise, the U.S. Government, who is also a party to the contract created by the affidavit, would not reasonably expect the sponsor to support any others with whom the immigrant might choose to live following her separation from the sponsor.

Accordingly, we hold that when a sponsored immigrant separates from the sponsor's household, the sponsor's obligation under the affidavit of support is to provide the immigrant with whatever support is necessary to maintain him or her at an annual income of at least 125% of the poverty guidelines for a one-person household. If the sponsor agreed to support more than one immigrant, and those immigrants separate from the sponsor's household and continue to live together, then the sponsor must provide them with whatever support is necessary to maintain them at an annual income of at least 125% of the poverty guidelines for a household of a size that includes all the sponsored immigrants. When measuring the immigrant's income, the court must disregard the income of anyone in the household

who is not a sponsored immigrant.[3]  Applying this rule to the present case, we conclude that Yashar has a continuing obligation to provide Ayla with whatever support is necessary to maintain her at an income that is at least 125% of the poverty guidelines for a one-person household.  For purposes of determining whether Yashar has fulfilled this obligation, the court must not consider Dogukan's income.

Before concluding, we note that Yashar argues in his brief that, even if Ayla is not credited with Dogukan's income, her annual income would exceed 125% of the poverty guidelines for a one-person household.  In calculating Ayla's income, Yashar includes Ayla's food-stamp benefits that she receives from the State of California, and benefits that she receives under a Turkish pension.  The pension benefits are deposited into a Turkish bank account, and Ayla contends that she cannot access the funds from within the United States. Because the district court concluded that Dogukan's income, on its own, was sufficient to provide Ayla with the necessary support, it did not address whether the food stamps and pension benefits should be treated as Ayla's income.  Nor did the district court address the ultimate question of whether, for the years since her separation from Yashar, Ayla's income was at least 125% of the poverty guidelines for a one-person household.  Rather than address these questions for the first time on appeal, we leave them for the district court to address on remand.

---

[3] We do not, however, consider a case where the sponsored immigrant has remarried.  In such a case, it may be appropriate to impute all or part of the spouse's income to the sponsored immigrant.

IV.

For the foregoing reasons, we agree with the district court to the extent it found that, despite the divorce, Yashar has a continuing obligation to support Ayla. However, we hold that court erred in treating Ayla and Dogukan as a combined household for purposes of determining whether Yashar breached that obligation. We therefore **VACATE** the court's grant of summary judgment to Yashar and **REMAND** for further proceedings consistent with this opinion. Costs shall be assessed against the defendant.

---

SCHROEDER, Circuit Judge, dissenting:

In my view, the district court got this difficult case right. My colleagues have held that Mr. Erler must pay support for his former wife, even though she is living in a household with income above the poverty level for its size. I do not agree.

The majority's fear is that taking into account the income of other persons in her household, though relieving Mr. Erler of any present obligation, could create a burden for Mr. Erler in the future, if his former wife were to live in a household with income below the poverty level. Thus, Mr. Erler is required to pay now, when her household is not in need, so that he will not have to pay later, when her household may be in need. Mr. Erler has not asked for this speculative future beneficence.

The district court correctly recognized that requiring him to pay now creates windfall benefits for Mrs. Erler, and depletes the sponsor's income, thereby putting him and others

at risk of becoming public charges in the future.  Since the purpose of the Affidavit of Support is to prevent an immigrant from becoming a public charge, *see* 8 U.S.C. § 1183a(a), the majority's holding is counterproductive. Hence this respectful dissent.