[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-14668

_____

VALENTIN BELEVICH,

Plaintiff-Appellee,

*versus*

KLAVDIA THOMAS &

TATIANA KUZNITSNYNA,

Defendants-Appellants,

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:17-cv-01193-AKK

_____

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

The question in this appeal is whether certain equitable defenses may excuse an immigrant's sponsor from her financial obligation to support the immigrant under 8 U.S.C. § 1183a. Tatiana Kuznitsnyna and her daughter, Klavdia Thomas, sponsored Kuznitsnyna's husband, Valentin Belevich, for admission into the United States by executing Form I-864 affidavits, which the Department of Homeland Security approved. By signing these affidavits, the sponsors promised the United States that they would support Belevich at 125% of the poverty income level if the United States granted Belevich a visa.

After Belevich immigrated from Russia, the sponsors cut off all financial support and accused him of sexually abusing Thomas's six-year-old daughter. Belevich sued to enforce their obligations, and the sponsors raised the affirmative defenses of unclean hands, anticipatory breach, and equitable estoppel. The district court rejected those defenses as a matter of law and awarded damages to Belevich.

The sponsors argue that the district court erred in rejecting their defenses. We hold that these defenses are foreclosed by the statute and regulation that govern the Form I-864 affidavit, as well as the text of the affidavit itself. Accordingly, we affirm.

## I.    BACKGROUND

Federal law provides that "[a]ny alien who . . . is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4)(A). A family-based immigrant is presumptively likely to become a public charge. *See* 8 C.F.R. § 213a.2(a)(1)(i)(A), (a)(2)(i). But that presumption can be overcome if a sponsoring relative executes an "affidavit of support." *Id.*; 8 U.S.C. § 1182(a)(4)(C)(ii), (a)(4)(D). In that Form I-864 affidavit, the sponsor promises the United States that he or she will support the immigrant "at an annual income that is not less than 125 percent of the Federal poverty line." 8 U.S.C. § 1183a(a)(1)(A).

Kuznitsnyna and Thomas co-sponsored the immigration of Kuznitsnyna's husband, Belevich, and signed Form I-864 affidavits. The affidavits said that their obligation to support Belevich would terminate if he became a citizen, worked forty quarters, no longer had lawful permanent resident status and departed the United States, attained a new affidavit of support, or died. The affidavit also said that "divorce does not terminate your obligations under this Form I-864." The Department of Homeland Security approved the affidavits and, because of the promised financial support, granted Belevich a visa.

Belevich and Kuznitsnyna lived together in the United States for several years. While Belevich was visiting his mother in Russia, Kuznitsnyna asked him for a divorce. When Belevich returned to the United States, Kuznitsnyna would not allow him back into their home. She then obtained a protection from abuse order against him and filed for divorce. Neither Thomas nor Kuznitsnyna

provided Belevich with any financial support after this point. Later, Belevich was criminally charged for abusing Thomas's minor daughter and possessing child pornography.

Because a support affidavit is "legally enforceable against the sponsor by the sponsored alien," *id.* § 1183a(a)(1)(B), Belevich sued the sponsors for breaching their support affidavits. The sponsors raised the affirmative defenses of unclean hands, anticipatory breach, and equitable estoppel.

The district court twice rejected the sponsors' argument that such non-statutory considerations may terminate their obligation to support Belevich. First, Belevich moved for a protective order to bar discovery regarding the criminal charges against him as irrelevant. The district court agreed and held that Belevich's conduct relating to the pending criminal charges had "no relevance to the statute at issue." Second, Belevich moved for summary judgment, arguing that the sponsors had breached their obligations under the affidavits and that none of the terminating events had occurred. The sponsors filed a cross-motion for summary judgment, arguing that their financial obligations had terminated because Belevich was "subject to removal" when the family court issued the protection from abuse order against him or, alternatively, when he was charged with criminal conduct. The district court granted Belevich's motion and denied the sponsors' motion. A jury later awarded damages, and the sponsors appealed.

## II.    DISCUSSION

The sponsors argue that the district court erred in concluding that the statute, regulation, and affidavit provide the exclusive grounds for terminating their support obligations.[1] We review this question of law *de novo*. *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021). Although this question is one of first impression for us, two of our sister circuits have rejected grounds for terminating the obligation for support that were not enumerated in the statute, regulation, or affidavit. *See Erler v. Erler*, 824 F.3d 1173, 1177–80 (9th Cir. 2016); *Wenfang Liu v. Mund*, 686 F.3d 418, 422–23 (7th Cir. 2012), *as amended* (July 27, 2012). We similarly hold that the sponsors' proposed defenses do not provide grounds to terminate their obligation to support Belevich.

As an initial matter, we conclude that federal law, not state contract law, governs this question. The statute and the applicable regulation define the scope of the sponsors' obligations, including the relevant terminating events. *See* 8 U.S.C. § 1183a(a)(1); 8 C.F.R. § 213a.2(c)–(e). For its part, the affidavit "simply incorporate[s] statutory obligations and record[s] the [sponsors'] agreement to abide by them." *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 118

---

[1] Belevich argues that the sponsors failed to properly preserve their non-statutory defense arguments for appeal. We disagree. To properly preserve an issue, a party must "clearly present it to the district court . . . in such a way as to afford the district court an opportunity to recognize and rule on it." *In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir. 1990). Because the sponsors adequately presented their non-statutory defenses in their second amended answer and in their opposition to Belevich's motion for a protective order, they have preserved these issues for appeal.

(2011). The statute also creates a federal cause of action so that "the sponsored alien, the Federal Government, [or] any State" may enforce a support affidavit against a sponsor. 8 U.S.C. § 1183a(a)(1)(B)–(C), (e); see also 8 C.F.R. § 213a.2(d). This federal cause of action gives the sponsored immigrant enforcement rights that he would not necessarily have under contract law. See Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 332 (2015) (explaining that contract law "generally" does not allow a beneficiary to sue to enforce "contracts between a private party and the government").

The statute's only mention of state law comes under the heading for "remedies." There, the statute incorporates federal debt collection processes, such as wage garnishment, allows "an order for specific performance and payment of legal fees and other costs of collection," and provides for "corresponding remedies available under State law." 8 U.S.C. § 1183a(c). In context, we think this reference to state law is best read to ensure only that an enforcing party, such as the United States, has access to state law remedies to enforce a judgment against the sponsor. See Yates v. United States, 574 U.S. 528, 543 (2015) (applying noscitur a sociis canon to hold that the earlier terms in a list "cabin the contextual meaning of" the last term). We do not read it to incorporate state law in defining the scope of a sponsor's obligation to provide financial support.

Because the availability of defenses to Belevich's cause of action is a question of federal law, we start with the text of the statute,

which provides that two events terminate the support obligation. Specifically, the statute states that "[a]n affidavit of support shall be enforceable with respect to benefits provided for an alien before the date the alien is naturalized as a citizen of the United States, or, if earlier, the termination date provided under paragraph (3)." 8 U.S.C. § 1183a(a)(2). For its part, paragraph (3) provides that the obligation ends after the immigrant has worked for forty quarters. *Id.* § 1183a(a)(3)(A).

The applicable regulation and affidavit identify additional grounds that end the obligation. The regulation provides that the sponsor's obligations terminate "when" the sponsored immigrant becomes a U.S. citizen, works forty qualifying quarters, ceases to hold permanent resident status and departs the United States, obtains a grant of adjustment of status as relief from removal, or dies. 8 C.F.R. § 213a.2(e)(2)(i). The support obligation also terminates if the *sponsor* dies. *Id.* § 213a.2(e)(2)(ii). The I-864 affidavit, which both sponsors executed, repeats these same terminating events and expressly notes that divorce is not a terminating event. The regulation also provides that "[o]nce the intending immigrant has obtained an immigrant visa, a sponsor . . . cannot disavow his or her agreement to act as a sponsor" unless the immigrant withdraws the visa petition. *Id.* § 213a.2(f).

The sponsors' proposed equitable defenses are not comparable to any of the listed reasons for terminating the support obligation. The sponsors allege that Belevich committed various bad acts that have undermined his relationship with his family. But the

grounds for terminating support under the statute, regulation, and affidavit concern the beneficiary's financial position and status in the country, not his relationship with his family. Indeed, the affidavit expressly tells the sponsor that he or she must continue to support the beneficiary even if their familial relationship is dissolved by a divorce.

The sponsors argue that the statute, regulation, and affidavit are merely silent about equitable reasons to terminate the obligation of support and that we may impute additional defenses because of this silence. We disagree.

First, we believe the text is best read to identify an exclusive list of terminating events. The statute says that the affidavit of support "shall be enforceable. . . before" the immigrant becomes a United States citizen or works forty quarters. 8 U.S.C. § 1183a(a)(2). Likewise, the regulation provides that a sponsor "cannot disavow" the agreement unless the sponsored immigrant withdraws his petition for a visa. 8 C.F.R. § 213a.2(f). This strong language—"shall" and "cannot"—suggests that the list of terminating events is exclusive.

The introduction to the list also undermines the sponsors' argument that a sponsor's obligation can terminate for an unlisted reason. The statute or regulation could have said that the obligation terminates for reasons "including" the enumerated events, thereby indicating an "illustrative, not exhaustive" list. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012). Instead, the statute introduces the list of terminating events with "before," and

the regulation introduces the list with "when." This language suggests that the obligation remains *until* one of the listed events occurs. By expressly listing the grounds for terminating the obligation, this text "justif[ies] the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *United States v. Curbelo*, 726 F.3d 1260, 1277 (11th Cir. 2013) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).

We also note that the sponsors gained no rights at all under the statute, regulation, or affidavit. The affidavit imposes a one-way obligation on the sponsor to support the immigrant without any counter-promises by the United States or the immigrant. Similarly, the statute provides a cause of action and remedies exclusively against the sponsor and in favor of the United States and the immigrant. Nothing in this structure contemplates an equitable remedy or defense for the benefit of a sponsor. *See Liu*, 686 F.3d at 422 ("The only beneficiary of [these equitable defenses] would be the sponsor—and it is not for [her] benefit that the duty of support was imposed.").

Because we read the text as identifying an exclusive list of terminating events, we cannot add these equitable defenses to that list.[2] Courts may craft equitable *remedies* to supplement a statutory cause of action. *See Transcon. Gas Pipe Line Co., v. 6.04 Acres,*

---

[2] Although we read the text to preclude non-statutory defenses like the ones asserted here, we do not address whether a sponsor may argue that an affidavit is void ab initio because, for example, it was procured by fraud or duress.

*More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1152 (11th Cir. 2018). But we cannot create equitable *defenses* to a statutory cause of action when the text forecloses them. *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1445–46 (11th Cir. 1998) (holding that, for enforcement of international arbitral awards, only the defenses enumerated in the New York Convention applied because they were preceded by the phrase "only if").

Second, even if we agreed with the sponsors that the statute is silent on this point, we would conclude that these specific defenses contravene the express purpose of the statute. *See Erler*, 824 F.3d at 1179 (rejecting divorce as a terminating event under an I-864 affidavit). "As between two competing interpretations, we must favor the 'textually permissible interpretation that furthers rather than obstructs' the statute's purposes." *Bryant*, 996 F.3d at 1256 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 4, at 63 (2012)).

The express purpose of this statutory scheme is to prevent admission to the United States of any immigrant who "is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A). The enumerated terminating events conform to this purpose: An immigrant is unlikely to become a public charge if he maintains stable employment, leaves the country, becomes supported by someone else, or dies. *See* 8 C.F.R. § 213a.2(e)(2)(i). Importantly, it is not enough that the sponsored immigrant's conduct—such as

committing a crime—could justify a change to the immigrant's status. The obligation of support remains until the change in status has occurred and the immigrant is no longer likely to become a public charge.

The sponsors' proposed non-statutory defenses, on the other hand, are inconsistent with this purpose. The defenses of unclean hands, anticipatory breach, and equitable estoppel concern the immigrant's wrongful acts, not whether he or she might become a public charge. If these grounds allowed the sponsor to cut off financial support, the public would have to shoulder the financial responsibility that the sponsor had voluntarily assumed. Because the sponsors' proposed equitable defenses are inconsistent with the purpose of the statute, we would decline to recognize these defenses even if we thought the statute was silent or ambiguous. See Louisville & Nashville R.R. Co. v. Maxwell, 237 U.S. 94, 97 (1915) (holding that the purchaser of a misquoted train ticket did not have a defense against the collection of a tariff because it would defy the policy of the relevant statute).

We recognize that our decision may impose a heavy burden on the sponsors, especially considering the crimes that Belevich allegedly committed against them. Nonetheless, the law compels this result. The sponsors' obligations will terminate if Belevich's prosecution results in a conviction and he is removed from the United States. See, e.g., 8 U.S.C. § 1227(a)(2)(E) (domestic violence is a deportable offense). In the meantime, we may not create defenses that the statute, regulation, and affidavit foreclose.

## III.    CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED**.