

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00097-CV

Laura Zamora **BERINGER**,
Appellant

v.

Michael **BERINGER**,
Appellee

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2017FLB001191C1
Honorable Hugo Martinez, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: April 1, 2020

AFFIRMED

Laura Zamora Beringer appeals a final divorce decree. In the final divorce decree, the trial court ordered that Michael Beringer was obligated to support Laura at 125 percent of the federal poverty guidelines. This obligation was based on an I-864 affidavit of support that Michael signed to assist Laura, who is a Mexican citizen, in applying to adjust her status to a lawful permanent resident of the United States. On appeal, Laura contends the trial court erred in denying her request for arrearages based on the I-864 support amount Michael was obligated to pay from the date of their separation to the date the divorce decree was entered. Laura also contends the trial court

erred in not awarding her reasonable and necessary legal fees that she was entitled to recover in enforcing Michael's obligation. We affirm the final divorce decree.

## BACKGROUND

Laura and Michael began a relationship while she was living in Mexico. In 2014, Laura moved to the United States to live with Michael. On June 3, 2016, Laura and Michael were married.

In August of 2016, Michael signed an I-864 affidavit of support agreeing to provide Laura any support necessary to maintain her at an income that is at least 125 percent of the federal poverty guidelines for her household size.[1] Laura subsequently became a lawful permanent resident.

In July of 2017, Michael filed for divorce, and Laura subsequently filed a counterpetition. In a paragraph of her counterpetition entitled "breach of contract," Laura requested that Michael "be ordered to support her under his federal contractual obligation based on U.S. Immigration Law form I-864, Affidavit of Support, as per the statutory requirements until his federal obligation ceases."

On February 2, 2018, Laura's attorney filed a memorandum of law regarding the I-864 support obligation. On February 5, 2018, and March 22, 2018, the trial court heard evidence, including Laura's testimony that she "was working as a laborer" after the parties separated and "was working day and part of night to pay the fees from [sic] my attorney." After hearing two days of evidence, the trial court granted the divorce but took the issue of Michael's obligation

---

[1] "Under 8 U.S.C. § 1183a, immigrants who are deemed likely to become public charges may gain admission to the United States if a sponsor signs United States Citizenship Immigration Services Form I-864 (the Affidavit), thereby promising to maintain the sponsored immigrant at no less than 125% of the Federal Poverty Guidelines for the immigrant's household size." *Erler v. Erler*, No. 12-CV-02793-CRB, 2017 WL 5478560, at *3 (N.D. Cal. Nov. 15, 2017). The sponsor's "promise to maintain the immigrant is intended not only to protect the immigrant from poverty, but to protect the government from a public burden." *Id.* (internal quotation marks omitted). "A Form I–864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant." *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1023 (N.D. Cal. 2008).

under the I-864 affidavit of support under advisement to review caselaw presented by the attorneys. On March 30, 2018, Michael's attorney filed an advisory providing additional caselaw and analysis regarding the I-864 support obligation.

On April 3, 2018, the trial court held an additional hearing. The morning of the hearing, Laura's attorney filed a reply to the advisory filed by Michael's attorney. During the hearing, the attorneys further discussed the I-864 support obligation and the effect Laura's income would have on that obligation. The trial court referred to the Texarkana court's decision in *In re Marriage of Kamali*, 356 S.W.3d 544, 545 (Tex. App.—Texarkana 2011, no pet.), in which the trial court found the husband was contractually obligated to support the wife based on an I-864 affidavit of support but limited the obligation to a period of thirty-six months. The Texarkana court held the trial court erred in limiting the payments to thirty-six months because the support obligation only ceased upon the occurrence of the terminating events enumerated in federal law. *Id*. at 547. Referring to the *Kamali* decision, the trial court in the instant case noted the Texarkana court "was saying, okay, henceforth, because of your obligation under the federal guideline — or the statute, you will have to pay "X" amount of dollars." ... "Which is kind of like what we're contemplating here." The trial court noted it did not have access to federal cases on Westlaw but would review the cases submitted and make a decision.

The next hearing held by the trial court was on June 6, 2018. In summarizing the issues she believed were still pending before the trial court, Laura's attorney listed the I-864 support obligation and, for the first time, referred to "arrears." Michael's attorney stated mitigation was also an issue. The trial court responded, "Well, I don't remember ever touching upon the issue of arrearages." Michael's attorney replied, "We did not." The trial court also noted no evidence was offered regarding arrearages. The trial court further questioned whether Laura's pleadings requested actual enforcement of the I-864 support obligation, noting, "when it's as part of the

decree, I guess, one of the things is just, you know, he's obligated to pay and then you file a petition to say he's not paying it." The trial court further noted, "we're doing it because like in that other case where the Texas court said, Well, you're right, I guess he's obligated." Later in the hearing, the trial court again stated, "I don't ever remember addressing . . . the arrears." The trial court again took the matter under advisement.

On November 19, 2018, the trial court held an additional hearing. The morning of the hearing, Laura filed an additional memorandum of law regarding the I-864 support obligation. The trial court began the hearing by stating he believed he resolved the pending issue by ruling Michael was obligated to continue to support Laura based on the I-864 affidavit of support. The trial court and the attorneys discussed mitigation and the effect of Laura's income on the I-864 support obligation. During the hearing, Laura's attorney stated Laura had no current income but acknowledged Laura "did have jobs on and off throughout this time that they've been separated, but she has not been able to hold one job." The trial court again took the matter under advisement to review the memorandum of law filed by Laura's attorney and to allow Michael's attorney the opportunity to file a response

After Michael's attorney filed a response, the trial court held a hearing on November 29, 2018, at which it ruled Michael would be ordered to pay Laura an amount equal to 125 percent of the federal poverty guidelines each month beginning December 1, 2019 and continuing until one of the statutory terminating events occurred. On January 25, 2019, the trial court signed a final divorce decree which provided, in pertinent part:

> The Court finds that under the circumstances presented in this case, Laura Zamora Beringer is eligible to enforce the Federal Affidavit of Support under the provisions of 8 U.S.C.§1183a(a)(1), (e)(1). Accordingly, Michael Beringer is ordered to pay his obligation to support Laura Zamora Beringer at 125% of Federal Poverty Guidelines, which may fluctuate yearly and should be verified by Michael Beringer yearly in May. The court hereby orders Michael Beringer to adjust his payments to Mrs. Laura Zamora Beringer accordingly on a yearly basis every May

based on the Federal Poverty Guidelines of each year to properly fulfill his obligation under this order.

Based on the 2018 Poverty Guidelines chart (attached) the court orders Michael Beringer to pay the sum of one thousand two hundred sixty-five dollars ($1,265.00) per month payable to Laura Zamora Beringer, with the first payment being due on December 1st, 2018, and a like amount being due on the first day of each consecutive month thereafter until the earliest of one of the following events occurs:

1. Laura Zamora Beringer becomes a United States citizen;
2. Laura Zamora Beringer has earned credit for 40 quarters of coverage under SSA;
3. Laura Zamora Beringer no longer has lawful permanent resident status and has departed the United States;
4. Laura Zamora Beringer obtains a new adjustment of status in removal proceedings, based on a new affidavit of support if one is required;
5. Petitioner or Respondent die.[2]

### ARREARAGES

In her first issue, Laura contends the trial court erred in denying her request for arrearages based on the I-864 support amount Michael was obligated to pay from the date of their separation to the date the divorce decree was entered. As we noted in the background section of the opinion, however, the trial court remarked at the June 6, 2018 hearing that the issue of arrears was never addressed at trial or at the first post-trial hearing on April 3, 2018. Accordingly, we first examine whether that issue was properly raised in the trial court.

"An action to enforce an affidavit of support . . . may be brought against a sponsor in any appropriate court." 8 U.S.C. 1183a(e). However, a trial court's judgment must be supported by the pleadings. TEX. R. CIV. P. 301.

In *Yuryeva v. McManus*, No. 01-12-00988-CV, 2013 WL 6198322, at *1 (Tex. App.—Houston [1st Dist.] Nov. 26, 2013, pet. denied), Delos McManus signed an I-864 affidavit of support so that Liudmila Yuryeva could move to the United States. In an appeal from a divorce

---

[2] These are the five events that terminate the I-864 support obligation under federal law. *See Shumye*, 555 F. Supp. 2d at 1024.

decree entered during the parties' subsequent divorce proceedings, Yuryeva argued the trial court erred in not enforcing McManus's obligations under the affidavit of support. *Id*. at \*6. Although the Houston court recognized the contractual obligation under an affidavit of support survives a divorce, the court also noted Yuryeva "did not request the court to enforce the affidavit when she filed her petition." *Id*. at \*7. Accordingly, the Houston court held Yuryeva "cannot complain of the trial court's failure to act on the affidavit." *Id*.

In the instant case, Laura's pleadings requested that Michael "be ordered to continue to support her under his federal contractual obligation" based on the I-864 affidavit of support. Laura's pleadings did not, however, request that Michael be ordered to pay arrears based on his past contractual obligation. The absence of such a request in her pleadings was evident from the remarks the trial court made during the June 6, 2018 hearing. Accordingly, Laura cannot complain of the trial court's failure to award such arrears.[3] *See id*. Laura's first issue is overruled.

## ATTORNEY'S FEES

In her second issue, Laura contends the trial court erred in failing to award her attorney's fees pursuant to 8 U.S.C. § 1183a(c). We agree with Laura that the statute authorizes her to recover legal fees in an action "to enforce an affidavit of support." 8 U.S.C. § 1183a(c). However, for the reasons previously stated, Laura's pleadings did not seek to enforce the affidavit of support as to

---

[3] We also note the support obligation imposed on a sponsor executing an I-864 affidavit of support is to "***maintain*** the sponsored alien at an annual income that is not less than 125 percent of the Federal Poverty line." 8 U.S.C. § 1183a(a)(1)(A) (emphasis added). For this reason, federal courts have reasoned the sponsored alien's income will reduce the amount the sponsor is obligated to pay. *See Erler v. Erler*, 824 F.3d 1173, 1180 (9th Cir. 2016); *Cyrousi v. Kashyap*, 386 F. Supp. 3d 1278, 1288 (C.D. Calif. 2019); *Stump v. Stump*, No. 1:04-CV-253-TS, 2005 WL 2757329, at \*7-8 (N.D. Ind. Oct. 25, 2005); *see also Naik v. Naik*, 944 A.2d 713, 718 (N.J. Super. Ct. App. Div. 2008) ("If wife's income during any one of those years exceeds the 125 percent level, husband has no support obligation for that year. If, in any year, her income is below this level, husband is obligated to pay the difference."). Although Laura's testimony at trial established she was employed after her separation from Michael, which her attorney acknowledged at the November 19, 2018 hearing, no evidence was presented regarding the amount of that income. Evidence of the amount of that income would have been necessary for Laura to complain on appeal that the trial court erred in failing to award her arrears. Absent such evidence, we could not determine on appeal whether Michael was required to pay her any amount of money to "maintain" her at an annual income that is not less than 125 percent of the federal poverty guidelines.

an arrearage Michael may have been obligated to pay between the date the parties separated and the date the divorce decree was entered. And, as the trial court recognized at the June 6, 2018 hearing, the pleadings could not have requested to enforce payment of any amounts Michael was required to pay in the future because they were not yet owed. Instead, Laura's pleadings basically requested declaratory relief relating to Michael's post-divorce obligations under the affidavit. *See Varnes v. Varnes*, No. 13-08-00448-CV, 2009 WL 1089471, at *5 (Tex. App.—Corpus Christi Apr. 23, 2009, no pet.) (noting potential for such a claim); *see also In re Marriage of Kamali*, 356 S.W.3d at 547 (providing such relief). And, we agree with the trial court that this request for declaratory relief was not an action to enforce Michael's obligation under the affidavit of support that would entitle Laura to recover attorney's fees under 8 U.S.C. § 1183a(c).

## CONCLUSION

The final decree of divorce is affirmed.

Patricia O. Alvarez, Justice