# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00330-CV

---

**Syed Kazmi, Appellant**

**v.**

**Syeda Kazmi, Appellee**

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-AG-18-001131, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

## O P I N I O N

Syed Kazmi appeals from a final judgment dissolving his marriage to Syeda Maheen Kazmi (Maheen).[1] By eleven issues, Syed challenges the district court's division of the community estate; awards of child support, spousal support, and attorney's fees; judgments for retroactive child and spousal support; deviation from the standard possession order; and setting payment deadlines that expired before the court signed the judgment. We will affirm in part, reverse and render in part, and remand in part.

---

[1] Because the parties share a surname and have similar given names, we refer to appellant by his given name and to appellee by her middle name.

# BACKGROUND[2]

The parties are both originally from Pakistan. Syed moved to the Austin area with his parents in 1992. After graduating from Duke University in 2008, he returned to Austin to pursue a PhD in biomedical engineering from the University of Texas. At the same time, Maheen was training as a doctor in Pakistan. In 2015, the parties married in Pakistan in a ceremony paid for by both their parents.

Syed returned to the United States after the marriage while Maheen remained in Pakistan to finish her last year of medical school. Maheen applied for permanent residency in the United States with Syed as her sponsor. As part of the process, Syed executed an affidavit promising to maintain her income at not less than 125% of the federal poverty level. *See* 8 U.S.C. § 1183a. Maheen's application was approved, and she moved in with Syed in his parents' residence in August 2016.

Maheen immediately began studying for the first part of the United States Medical Licensing Examination (USMLE), a prerequisite to obtaining a Texas medical license. Maheen did not have a driver's license, and Syed did not add her as a signatory to his bank account until a few months after she arrived. Syed explained at trial that she chose not to pursue a driver's license so that she could focus on her studies and did not need access to a bank account because he or his parents covered all her expenses.

Although the couple originally planned for Maheen to take the first part of the exam as soon as possible, she was dissatisfied with her scores on practice exams. She could not fully understand the factual details behind each question, the questions used "advanced

---

[2] We draw these facts from the testimony of Syed; his mother, Iffat Kazmi; Maheen; and the documentary evidence admitted at trial.

2

terminology" that she was unfamiliar with, and the questions required her to employ a procedure for diagnosing a condition that was significantly different from how she had been trained in Pakistan. To address these issues, she enrolled in courses at Austin Community College on subjects such as organic chemistry and microbiology. At the time of trial, her plan was to complete the last of those courses by summer of 2022 and then enroll in a physician's assistant program. The coursework for the program would help with her test preparation and working as a physician's assistant would provide clinical experience. She would then take the USMLE and enroll in a medical residency program.

Maheen learned that she was pregnant in mid-June 2017. Approximately a week later, Maheen left the house and moved in with a family member in Pflugerville. The parties enlisted their sheikh to mediate, and Maheen returned home approximately a month and a half later. She left again in August when Syed was out of the country on business. To make ends meet, Maheen borrowed money from her family. The district court later admitted a summary she prepared reflecting she owes them $36,060.

Z.K. was born in February 2018. The parties agreed that Syed would provide Maheen $400 in child support per month provided in the form of a prepaid credit card. They also agreed that Syed would pay the cost of Z.K.'s birth and the portions of his medical bills not covered by insurance.

In July 2018, the Office of the Attorney General sued Syed (and named Maheen as a party) over support for Z.K. The parties reached a mediated settlement agreement calling for Syed to immediately start weekly two-hour supervised visits with Z.K., transitioning to unsupervised visits twice a week. Syed agreed to pay $1,440 in child support beginning March 1, 2019. The district court signed temporary orders consistent with the agreement.

Syed filed a petition for divorce, and Maheen filed a counterpetition. Maheen alleged in her petition that Syed had committed fraud on the community and asked the district court to reconstitute the marital estate. After the parties exchanged discovery, it emerged that Syed had transferred significant sums of money from his accounts, including the joint account, from 2017 to 2019. The district court admitted records at trial reflecting that Syed transferred or withdrew $38,940 in 2016; approximately $50,000 in 2017; and $47,000 in 2019. Syed and his mother, Iffat Kazmi, testified that the transfers were repayments for debts the couple or Syed individually owed to his parents. Maheen also asked the district court to order Syed to continue to pay child support, to pay spousal support pursuant to the I-864 affidavit, to award her retroactive judgments for unpaid support, and to order Syed to pay her attorney's fees. She requested that the court appoint her managing conservator of Z.K. with the right to establish his primary residence and Syed possessory conservator, and to award Syed possession under the expanded standard possession order.

In July 2020, an associate judge signed temporary orders increasing Syed's child support obligation to $1,782 per month and ordering him to pay $2,500 per month in interim spousal support and $13,000 in attorney's fees.

In November 2020, Maheen filed an amended petition that omitted her request to enforce the I-864 affidavit. In January of 2021, Maheen filed an amended petition that included her request for I-864 support and a motion for leave to amend.

The parties tried the case to the bench on February 8–11, 2021.[3] On the second day of trial, the parties' counsel announced an agreement on certain matters, including Maheen's

<hr>

[3] The Office of the Attorney General did not participate. All future references to the parties refer to Syed and Maheen.

4

motion for leave to amend. Syed's counsel stated that while he did not agree with the requested relief, "we understand that [Maheen's petition] has been amended to this trial and are proceeding on those issues." The district court accepted the agreement and proceeded with the trial. The district court heard testimony from the parties, Iffat, and the parties' counsel. At the close of trial, the district court granted the divorce, announced its ruling on several issues, and asked the parties to draw up a draft divorce decree.

Maheen filed a motion to enter the decree in August 2021. Syed filed a Motion for Reconsideration and Clarification and attached his affidavit. On March 7, 2022, the district court denied Syed's motion and signed the final decree of divorce.[4] In the decree, the district court:

- ordered Syed to pay $1,782 per month in child support and $1,329 in spousal support under the I-849 affidavit;

- awarded Maheen a $14,975 judgment for retroactive child support and a $47,629 judgment for retroactive spousal support;

- ordered Syed to pay Maheen $53,255.70 in attorney's fees and expenses;

- found that Syed depleted the community estate of $163,377 through constructive fraud and awarded Maheen a $99,125 judgment to compensate her;

- ordered Syed to pay Maheen $2,200 for "maintenance" of the "2014 Chrysler Town & Country motor vehicle" awarded to her; and

- appointed the parties joint managing conservators with Maheen having the right to designate Z.K.'s primary residence and Syed having possession under a modified standard possession order until Z.K. turns eight, at which time Syed will have possession under the expanded standard possession order.

---

[4] Maheen filed a motion to strike Syed's affidavit. The district court did not explicitly rule on the motion but indicated in its order denying Syed's Motion for Reconsideration and Clarification that it considered the parties' evidence.

5

At Syed's request, the district court filed findings of fact and conclusions of law.

Syed filed a motion for new trial and an alternative motion to modify the judgment. In the motion for new trial, Syed challenged the award of attorney's fees, child support, spousal support, and possession and access to Z.K. Syed argued in the motion to modify that the judgment improperly set deadlines for him to begin paying the various awards that preceded the signing of the judgment. The district court denied the motion to modify by written order and allowed the motion for new trial to be overruled by operation of law. This appeal ensued.

**LEGAL STANDARDS**

We review the issues raised in this appeal for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (conservatorship); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981) (property division); *Kelly v. Kelly*, 634 S.W.3d 335, 364 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (spousal support); *In re E.A.C.*, 665 S.W.3d 763, 775 (Tex. App.—San Antonio 2023, no pet.) (attorney's fees); *White v. White*, No. 03-21-00323-CV, 2022 WL 2542004, at *1 (Tex. App.—Austin July 8, 2022, no pet.) (mem. op.) (child support). A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard for guiding rules or principles, or without supporting evidence. *Transcor Astra Group S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 482 (Tex. 2022).

In this context, the abuse-of-discretion standard overlaps with traditional standards for reviewing the sufficiency of the evidence. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Consequently, the legal and factual sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing

whether the trial court abused its discretion. *A.S. v. Texas Dep't of Fam. & Protective Servs.*, 665 S.W.3d 786, 795 (Tex. App.—Austin 2023, no pet.). The reviewing court determines first "whether the trial court had sufficient information on which to exercise its discretion and, if so, whether the trial court erred in its application of discretion." *Id.* The focus of the first inquiry is the sufficiency of the evidence, which we answer using traditional sufficiency standards of review. *Mason v. Mason*, No. 03-17-00546-CV, 2019 WL 1967166, at *2 (Tex. App.—Austin May 3, 2019, no pet.) (mem. op.).

In reviewing for legal sufficiency, "we view the evidence in the light most favorable to the verdict, crediting favorable evidence when reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not." *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 794 (Tex. 2020). A party challenging the legal sufficiency of an adverse finding on which it did not bear the burden of proof at trial "must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). We will sustain a no-evidence challenge when (1) evidence of a vital fact is absent, (2) rules of law or evidence bar us from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Bos v. Smith*, 556 S.W.3d 293, 299–300 (Tex. 2018).

In reviewing for factual sufficiency, "we examine the entire record and consider and weigh all the evidence, both in support of and contrary to the challenged finding." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of an adverse finding on which it did not bear the burden of proof, we will set aside the finding "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and

unjust." *Republic Petroleum LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 433 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

Under either standard, the trier of fact "is the sole judge of the credibility of witnesses and the weight to be given their testimony." *Altice v. Hernandez*, 668 S.W.3d 399, 410 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). We therefore "may not pass upon the witnesses' credibility or substitute our judgment for that of the fact finder." *4922 Holdings, LLC v. Rivera*, 625 S.W.3d 316, 325 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

Syed's issues involve questions of statutory interpretation, which we review de novo. *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021). Our goal in construing a statute is to ascertain and give effect to the legislature's intent. *Hegar v. Health Care Serv. Corp.*, 652 S.W.3d 39, 43 (Tex. 2022). "In doing so, we enforce the plain meaning of statutory text, informed by its context." *Id.* We seek to "give effect to all words of a provision and avoid constructions that would render any part of it meaningless." *Odyssey 2020 Acad.*, 624 S.W.3d at 540. We apply essentially the same rules in analyzing federal statutes. *See In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding) ("In analyzing federal statutes, we apply principles substantially similar to those that govern our interpretation of Texas law.").

**DISCUSSION**

Syed argues in eleven issues that the district court abused its discretion by: (1–3) concluding that he depleted the community estate through constructive fraud and reconstituting

8

the estate by $163,377; (4–6) ordering him to pay support pursuant to the I-864 affidavit and awarding a judgment for unpaid support; (7) awarding him custody of Z.K. under a modified standard possession order; (8) miscalculating the amount of unpaid child support; (9) ordering him to pay Maheen $2,200 for maintenance on her vehicle; (10) setting payment deadlines that expired before the date that the district court signed the decree; and (11) ordering him to pay Maheen's attorney's fees.

**Constructive Fraud**

Syed argues in his first three issues that the district court abused its discretion by finding that he depleted the community estate through constructive fraud and by reconstituting the estate by $163,377.

In a divorce case, the trial court must order a division of the community estate in a manner the court deems "just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. Trial courts have "wide latitude" in determining what constitutes a just and right division, *Murff*, 615 S.W.2d at 698, and may order an unequal division of property if there is a reasonable basis for doing so, *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.).

Waste of community assets by a spouse may support an unequal division of property. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). "A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse." *Puntarelli v. Peterson*, 405 S.W.3d 131, 137 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A presumption of "'constructive fraud' arises when one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent." *Id.* at 137–38. Once

9

the presumption arises, the burden of proof "shifts to the disposing spouse to prove the fairness of the disposition of the other spouse's one-half community ownership." *Id.* at 138. In determining whether a disposition is fair, the court may consider the size of the disposition in relation to the total size of the community estate; the adequacy of the remaining estate; and the relationship of the parties involved in the transaction. *Wheeling v. Wheeling*, 546 S.W.3d 216, 225 (Tex. App.—El Paso 2017, no pet.) (citing *Puntarelli*, 405 S.W.3d at 138). If the trier of fact finds that a spouse committed fraud, the trial court shall "calculate the value by which the community estate was depleted as a result of the fraud on the community and calculate the amount of the reconstituted estate" and "divide the value of the reconstituted estate between the parties in a manner the court deems just and right." Tex. Fam. Code § 7.009(b).

*Presumption of Fraud*

Syed argues in his first issue that there is insufficient evidence to support the presumption of fraud regarding the transfers. He points to Maheen's testimony that she "didn't know at the time that [Syed]'s transferring *that much* money" and that "he's making *that much* [sic] transfers" (emphases added) and argues that the italicized language indicates that she was aware of the transfers, if not the amounts. In the alternative, Syed argues that "even if [he] did not tell her about the transfers, that does not prove she lacked knowledge concerning them." He argues that Maheen was aware of the transfers because she was a co-signer on one of the accounts.[5] But Maheen testified that she was unaware of the specific transfers at issue and denied seeing bank statements. The district court was entitled to conclude Maheen's testimony

---

[5] Syed also argues that Maheen "had seen the bank statements" by citing to her testimony where she is shown an account summary with her name on the account.

was credible, and we defer to that determination. *See Altice*, 668 S.W.3d at 410; *4922 Holdings*, 625 S.W.3d at 325. Applying the appropriate standards of review, we conclude there is legally and factually sufficient evidence to support the presumption of constructive fraud. *See Slicker v. Slicker*, 464 S.W.3d 850, 861 (Tex. App.—Dallas 2015, no pet.) (upholding finding of constructive fraud where wife testified she was unaware of large transfers and both she and psychologist testified that her husband "controlled the relationship and the finances").

### *Windfall*

Next, Syed argues that the district court abused its discretion because it is uncontested that a "significant amount" of the transfers were to repay his parents "for purchasing items that were awarded to Maheen [in] the property division" or for expenses such as the cost of the "wedding, the couples' airfare, and Maheen's courses/tutoring." We understand Syed as arguing that he met his burden to rebut the presumption of fraud by showing the transfers were fair. Maheen responds that the record supports the district court's finding that he failed to rebut the presumption.

We agree with Maheen. The district court concluded that Syed failed to rebut the presumption of fraud, referencing Iffat's testimony "that he was not paying household expenses" through the transfers but that Syed "would just give her some money to spend, like he does all the time." Iffat and Syed both testified that Syed was repaying his parents for certain expenditures, and Syed provided an itemized list of some of the expenditures in his affidavit. Even if using community funds to repay his parents for those expenditures would be legitimate, the district court was not required to ignore that the transfers stopped when the parties exchanged discovery in 2019. Iffat confirmed that they decided not to continue with the transfers because

11

Syed "thought that [the] attorneys don't look at it nicely. They think that I'm – you know, what is happening to the money?" Now, they "make two payments for one credit card." Iffat's testimony supports the district court's finding that the transfers were not legitimate uses of community funds. Considering the relevant factors, *see Wheeling*, 546 S.W.3d at 225, we conclude there is legally and factually sufficient evidence to support the district court's conclusion that Syed failed to rebut the presumption of constructive fraud.

*Valuation of the Estate*

By his third issue, Syed argues that there is insufficient evidence to support the district court's decision to reconstitute the estate by $163,377.

The district court found that Syed depleted the estate by $163,377 based on a document Maheen prepared listing transfers and withdrawals from two bank accounts totaling that amount. Syed argues that there is insufficient evidence that he made all the transfers because he testified to not remembering some of the transfers from the joint account. He contends that Maheen could have made some of the transfers because, even though she did not have a debit card, she had "the ability to make transfers and/or cash withdrawals at the bank." And he argues she did not prove that she could not go to the bank in person or access the account online.[6] But Maheen's burden to present sufficient evidence that it was Syed who made the allegedly fraudulent transfers and withdrawals does not require her to conclusively establish that point. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) (evidence is legally

---

[6] We note that Syed argued in his opening brief that this document "contains a mathematical error wherein the various transfers and cash withdrawals do not add up to the $163,377 total" and, further, that the district court miscalculated the equalization judgment by $30,000. After Maheen pointed out that Syed provided no further explanation, Syed conceded in his reply brief that the summary contains no mathematical error.

sufficient when it "would enable reasonable and fair-minded people to differ in their conclusions"); *Republic Petroleum*, 474 S.W.3d at 433 (evidence factually sufficient if it is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust"). Maheen testified that she had no access to the account, never saw the bank statements during the marriage, and never went to the bank to withdraw or transfer money. Moreover, Syed's testimony that she never needed to spend money in the first year of the marriage because he or his parents took care of all her expenses supports that she had little to do with the couple's finances.[7] Applying the appropriate standards of review, we conclude there is legally and factually sufficient evidence to support the valuation of the estate.

Having concluded that there is sufficient evidence to support the presumption of constructive fraud, a conclusion that Syed failed to rebut the presumption, and the district court's valuation of the community estate, we overrule Syed's first three issues.

**I-864 Issues**

Syed argues in his fourth through sixth issues that the district court abused its discretion by ordering him to pay Maheen $1,329 in support per month pursuant to his I-864 obligation and by awarding her a judgment of $47,269 for unpaid support.

Federal law generally makes an immigrant who "is likely at any time to become a public charge" inadmissible to the United States. 8 U.S.C. § 1182(a)(4)(A). Family-sponsored immigrants may gain admission if their sponsor signs an affidavit of support under Section 1183a. *Id.* § 1183. By signing the affidavit, known as a Form I-864, the sponsor agrees to

---

[7] Syed argues in his reply brief that Maheen ignores that Iffat was also a signatory and could have made the transfers herself. But there is no evidence that Iffat made any withdrawals or transfers from the account.

maintain the immigrant beneficiary "at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." *Id.* § 1183a(a)(1)(A). The form "is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant." *Beringer v. Beringer*, No. 04-19-00097-CV, 2020 WL 1545797, at *1 n.1 (Tex. App.—San Antonio Apr. 1, 2020, no pet.) (mem. op.) (citing *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1023 (N.D. Cal. 2008)). An immigrant beneficiary may bring an action against the sponsor "in any appropriate court" to enforce the sponsor's support obligation. 8 U.S.C. § 1183a(e)(1). The statute specifies five events that terminate the sponsor's obligation, none of which have occurred here.[8]

### Supported by the Pleadings

Syed argues in his fourth issue that the pleadings do not support the award of retroactive support because Maheen did not seek damages but only requested that the district court order "specific performance."

A trial court's judgment must conform to the pleadings. Tex. R. Civ. P. 301. A cause of action is sufficiently pleaded only if the petition gives "fair notice of the claim involved." *Id.* R. 47(a). The "key inquiry" is whether the opposing party "can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835, 849 (Tex. 2021). To meet this

---

[8] The sponsor's duty to support terminates when the immigrant beneficiary: (1) becomes a U.S. citizen, (2) works or receives credit for 40 qualifying quarters of coverage under the Social Security Act, (3) loses their status as a lawful permanent resident and departs the United States, (4) obtains in a removal proceeding a grant of adjustment of status as relief from removal, or (5) dies. *See* 8 U.S.C. § 1183a(a)(2)–(3); 8 C.F.R. § 213a.2(e)(2)(i). Divorce does not terminate the support obligation. *See, e.g.*, *Erler v. Erler*, 824 F.3d 1173, 1176–77 (9th Cir. 2016); *Yuryeva v. McManus*, No. 01-12-00988-CV, 2013 WL 6198322, at *7 (Tex. App.—Houston [1st Dist.] Nov. 26, 2013, pet. denied) (mem. op.) (same).

standard, a "pleading must give fair notice not just of alleged facts, but 'of the claim and the relief sought such that the opposing party can prepare a defense.'" *Montelongo v. Abrea*, 622 S.W.3d 290, 300 (Tex. 2021) (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding)). When, as here, no special exceptions are filed, we "liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition." *Fontenot v. Fontenot*, 667 S.W.3d 894, 905–06 (Tex. App.—Houston [14th Dist.] 2023, no pet.).

Maheen alleged in her amended petition that the parties separated in June of 2017 and that Syed "has refused and continues to refuse to support" her and asked the court to order Syed to pay support "in accordance with the affidavit" and to grant her "specific performance."[9] Syed argues that this does not support the judgment for retroactive support because this Court has held that a request for specific performance does not support an award of money damages. *See Caruso v. Krieger*, 698 S.W.2d 760, 762 (Tex. App.—Austin 1985, no writ) ("A prayer for specific performance will not support a default judgment for compensatory damages."). *Caruso* does not control here. The plaintiff sued seeking specific performance of an earnest-money contract and then made an oral trial amendment seeking money damages. *Id.* at 761. In addition

---

[9] Syed argues that the "record clearly demonstrates that the parties did not request a trial amendment and the trial court did not grant one" and that it is "unclear" from his counsel's statements "whether the parties agreed to a claim for retroactive I-864 support." We understand him to mean that the agreement between counsel announced in court defines the scope of the triable issue rather than Maheen's proposed amended petition. In announcing the agreement, Maheen's counsel described the motion and the requirement that trial courts are to "freely" grant trial amendments to pleadings unless the opposing party demonstrates prejudice. *See* Tex. R. Civ. P. 66. Syed's counsel stated that they had agreed to treat certain late-filed pleadings as "in effect, trial amendments, and that, therefore, [Syed] is acknowledging that we would not be able to satisfy to the Court that these amendments would prejudice him in maintaining his actions against the defenses." The trial judge accepted the agreement and asked Maheen's counsel to provide a copy of the amended petition that counsel filed with the motion for leave. We reject Syed's argument that the trial court did not grant a trial amendment.

to asking for specific performance, Maheen asked the court to order Syed to support her "in accordance with the affidavit," in which she alleged he had failed to do since the parties separated in 2017. Construed liberally, a request for a judgment for unpaid support may be reasonably inferred from the language of her petition. *See id.* We conclude that the judgment is supported by the pleadings.

We overrule Syed's fourth issue.

*Contract Defenses*

Syed argues in his fifth issue that the district court erred by "refusing to apply [his] contract defenses." Specifically, Syed argues that the district court erred by rejecting his request to apply offsets to the retroactive award and by concluding that Maheen had no duty to mitigate her damages. *See Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980) ("The right of offset is an affirmative defense."); *Zimmerman Truck Lines, Inc. v. Pastran*, 587 S.W.3d 847, 862 (Tex. App.—El Paso 2019, no pet.) ("Failure to mitigate damages is an affirmative defense."). He contends those defenses apply because an action to enforce an I-864 affidavit is a breach-of-contract action like any other.[10]

We begin with Syed's argument that he was entitled to offset the judgment for unpaid support. He argues that the district court should have applied offsets for the spousal and child support he paid Maheen while the divorce was pending and for the loans Maheen received from her family during the same period but refused. Maheen responds that the district court applied the only permissible offset, which is for support actually paid.

---

[10] There is no dispute that Syed adequately pled both defenses.

16

We agree with Maheen.  Syed began paying the temporary spousal support in August 2020.  The divorce decree states that the district court "finds and confirms that Syed Kazmi is in arrears in the amount of forty-seven thousand six hundred twenty-nine dollars ($47,629.00) for the period of September 1, 2017 through September 1, 2020" and awards a judgment in that amount.  Syed argues that even if the judgment for unpaid support is only for September 2017 to September 2020, he is entitled to a reduction for the support he paid in August.  The only evidence for that unpaid support is an itemized spreadsheet prepared by Maheen stating that Syed owes a total of $47,629 in support for July 2017 to July 2020.  There is no evidence that that $47,629 awarded in the judgment includes the spousal support he paid in August 2020.

We also agree that Syed was not entitled to additional offsets.  To answer the question of what offsets are allowed, we look to federal law.  Although courts refer to an I-864 affidavit as a contract, *e.g., Beringer*, 2020 WL 1545797, at *1 n.1, the "statute and the applicable regulation define the scope of the sponsors' obligations," *Belevich v. Thomas*, 17 F.4th 1048, 1051 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2754 (2022).  The affidavit "simply incorporate[s] statutory obligations and record[s] the [sponsors'] agreement to abide by them."  *Id.* (citing *Astra USA, Inc. v. Santa Clara County,* 563 U.S. 110, 118 (2011) (alterations in original)).  The statute provides that the sponsor "agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable."  8 U.S.C. § 1183a(a)(1)(A).  "To determine the appropriate damages, courts compare the plaintiff's annual income for the particular years at issue . . .  against the 125% poverty threshold for each particular year."  *Younis v. Farooqi*, 597 F. Supp. 2d 552, 554 (D. Md. 2009) (citing *Shumye*, 555 F. Supp. 2d at

17

1024). Thus, to determine whether Syed is entitled to additional offsets depends on what constitutes "income."

The statute does not define income, and courts have not followed a uniform approach. *See Flores v. Flores*, 590 F. Supp. 3d 1373, 1380–81 (W.D. Wash. 2022) (citing cases taking different approaches). Recently, several federal courts have looked to the definition in 8 C.F.R. § 213a.1:

> Household income means the income used to determine whether the sponsor meets the minimum income requirements under sections 213A(f)(1)(E), 213A(f)(3), or 213A(f)(5) of the Act.
>
> . . . .
>
> Income means an individual's total income (adjusted gross income for those who file IRS Form 1040EZ) for purposes of the individual's U.S. Federal income tax liability, including a joint income tax return (e.g., line 22 on the 2004 IRS Form 1040, line 15 on the 2004 IRS Form 1040A, or line 4 on the 2004 IRS Form 1040EZ or the corresponding line on any future revision of these IRS Forms).

8 C.F.R. § 213a.1(2) (2023). This regulation sets out definitions for use in connection with evaluating affidavits of support. *See id.* Some federal courts refuse to apply Section 213a.1 because, in their view, it "applies only to determine whether a sponsor's household income is sufficient to sponsor an immigrant, not to calculate the sponsored immigrant's income post-separation." *Tsanev v. Tsanev,* No. C21-1667-MLP, 2022 WL 3566759, at *6 (W.D. Wash. Aug. 18, 2022). Without a statutory or regulatory definition, these courts interpret income "expansively" to "include[e] the immigrant's government benefits, educational grants, and alimony, if any." *Ronchin v. Hoop*, No. 19 C 3981, 2021 WL 4902456, at *3 (N.D. Ill. Oct. 21, 2021); *see Tsanev*, 2022 WL 3566759, at *6 (citing other decisions taking expansive approach). More recently, courts have applied Section 213a.1 even though it is not explicitly

18

applicable. *See, e.g.*, *Flores*, 590 F. Supp. 3d at 1382 (deciding that "it makes sense to apply the definition set forth in 8 C.F.R. § 213a.1").

In deciding whether to apply this definition, we start with "the stated statutory goal," which is "to prevent the admission to the United States of any alien who 'is likely at any time to become a public charge.'" *Wenfang Liu v. Mund*, 686 F.3d 418, 422 (7th Cir. 2012) (citing 8 U.S.C. § 1182(a)(4)(A)); *see Beringer*, 2020 WL 1545797, at *1 n.1 ("The sponsor's promise to maintain the immigrant is intended not only to protect the immigrant from poverty, but to protect the government from a public burden." (citation omitted)). Consistent with this focus, the sponsor's obligation of support terminates only if the immigrant becomes naturalized or "has worked 40 qualifying quarters of coverage as defined under title II of the Social Security Act or can be credited with such qualifying quarters." 8 U.S.C. § 1183a(a)(2), (3)(A). Applying Section 213a.1's definition of income is consistent with that focus. Interpreting the term more expansively has led courts to conclusions less consistent with the statutory purpose. *See, e.g.*, *Erler v. Erler*, No. 12-CV-02793-CRB, 2017 WL 5478560, at *8–9 (N.D. Cal. Nov. 15, 2017), *aff'd*, 798 Fed. Appx. 150 (9th Cir. 2020) (concluding that income from foreign pension funds that immigrant beneficiary could not access constituted income); *Toure-Davis v. Davis*, No. CIV.A. WGC-13-916, 2015 WL 993575, at *6 (D. Md. Mar. 4, 2015) (holding that third party's allowing immigrant beneficiary to sleep in basement in return for housecleaning services constituted income).

In sum, Section 213a.1's definition of income is consistent with the statutory text and applying it furthers the goal of ensuring the immigrant beneficiary does not become a public charge. In the absence of further guidance, we will apply Section 213a.1 in calculating a sponsored immigrant's income. *See Flores*, 590 F. Supp. 3d at 1382 (employing Section

213a.1); *Sultana v. MD Safayet Hossain*, 575 F. Supp. 3d 696, 699–700 (N.D. Tex. 2021) (same); *Fukita v. Gist*, No. 20-CV-1869 (SRN/LIB), 2021 WL 288121, at *5 (D. Minn. Jan. 28, 2021) (same).

Applying Section 213a.1, Syed is not entitled to an offset for his child support payments because child support is not treated as taxable income. *See* 26 C.F.R. § 1.71-1T, Q&A-15 (2023) (instructing that in computing taxable income, payment that is "payable for the support of a child of the payor spouse . . . is not . . . includible in the income of the payee spouse."). That is consistent with the nature of Syed's child support obligation. Unlike a sponsor's duty under a Form I-864 affidavit, a "parent's duty of support, although often characterized monetarily and used with terms like 'arrearages,' is not a debt owed to the other parent." *Office of Atty. Gen. of Tex. v. Scholer*, 403 S.W.3d 859, 866 (Tex. 2013). It is, rather, "a legal duty arising out of the status of the parties." *Id.* (citing *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993)). The purpose of child support is not to provide a benefit to one parent but "to help a custodial parent maintain an adequate standard of living for the child." *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991). Both the nature and purpose of Syed's child support obligation indicate that Syed is not entitled to offset for his child support payments.

Syed relies on *Naik v. Naik*, 944 A.2d 713 (App. Div. 2008), to reach the contrary result. The reviewing court there stated that when "the sponsor and sponsored immigrant are married, alimony, child support (if any) and equitable distribution of income-producing assets must be included in the sponsored immigrant's available support." *Id.* at 717. The basis for this conclusion was language in Part 6 of Form I-864, which states that signing the form requires the sponsor to provide the intended immigrant "any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines . . . ." *Id.* The court

construed this language to mean that the sponsor "is not necessarily required to pay the sponsored immigrant 125 percent of the Federal Poverty Guidelines for the appropriate family unit size" but is only obliged to pay the difference between the beneficiary's actual income and the statutory threshold. *Id.* at 718. While we do not disagree as a general matter, it does not follow that any monetary payment received by the beneficiary necessarily counts as income. We decline to follow *Naik*, and we conclude the district court did not err in concluding Syed's child support payments did not offset his support obligation.[11] *See Younis*, 597 F. Supp. 2d at 555 (concluding sponsor not entitled to offset for child support because child support is for benefit of child and is not considered income for federal tax purposes).

Syed also contends that the district court should have applied an offset for $36,960 Maheen received from her family between August 2017 and February 2019. He argues those funds were gifts rather than nontaxable loans because there "was no formal paperwork and there were no consequences for failing to repay them." Generally, a "loan is not taxable income when received because the taxpayer has an obligation to repay it." *Nath v. Commissioner of Internal Revenue*, T.C.M. (RIA) 2023-022 (T.C. 2023). The "conventional test" for a loan in the taxation context "is to ask whether, when the funds were advanced, the parties actually intended repayment." *Welch v. C.I.R.*, 204 F.3d 1228, 1230 (9th Cir. 2000). Maheen testified that she is

---

[11] Syed also relies on *Nwauwa v. Ugochukwu*, No. 1:18-CV-1130-RP, 2019 WL 2077048, at *3 (W.D. Tex. May 10, 2019). Nwauwa, an immigrant beneficiary, sought a preliminary injunction to require the sponsor, Ugochukwu, to pay her I-864 support while their divorce negotiations were ongoing. *Id.* at *1. At the time, Ugochukwu was also paying $1,850 in monthly child support. *Id.* The district court concluded that Nwauwa had not met her burden to show a likelihood of success because she "provided no evidence to show that she receives less than $1,301 from Ugochukwu each year." *Id.* at *3. The court mentioned the child support payments but also stressed evidence that he was making additional payments every two weeks since the separation. *Id.* *Nwauwa* does not support that child support payments offset payments under a Form I-864 affidavit.

expected to repay her family members, and the spreadsheet admitted into evidence reflects that she has begun repayments. Syed presented no contrary evidence. On the record and arguments before us, we conclude the district court did not abuse its discretion in refusing to apply an offset for the money Maheen received from her family.

In sum, we conclude that the district court did not abuse its discretion by refusing to apply offsets for temporary spousal support and the loans Maheen received from family members.

We turn next to whether Maheen was obligated to mitigate her damages. "[T]he doctrine of mitigation of damages . . . prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff." *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 487 n.3 (Tex. 2019) (citing *Great Am. Ins. v. North Austin Mun. Util. Dist.*, 908 S.W.2d 415, 426 (Tex. 1995)). The district court concluded that Maheen had no duty to mitigate and, in the alternative, that she fulfilled her duty. Syed argues that Maheen had a duty to mitigate because "the I-864 affidavit is a contract" and Texas law requires plaintiffs in contract suits to mitigate their damages. He also contends that recognizing a duty to mitigate would further the statutory objective by encouraging sponsored immigrants to support themselves. Maheen responds that we should follow the courts that have concluded the statute imposes no duty to mitigate.

We agree with Maheen. Although Texas law imposes a duty to mitigate, the question is whether requiring the sponsored immigrant to mitigate her damages is consistent with the sponsor's obligation as defined by statute. *See Belevich*, 17 F.4th at 1051 ("The statute and the applicable regulation define the scope of the sponsors' obligations . . . ."). The Seventh Circuit declined to impose a duty to mitigate because none appeared in the statute. *Wenfang Liu*,

22

686 F.3d at 422–23. The court reasoned that the "most direct path" to the statute's stated goal of ensuring the immigrant does not become a public charge is to "impos[e] on the sponsor a duty of support with no excusing conditions." *Id.* at 422. Imposing a duty to mitigate would only benefit the sponsor, and "it is not for his benefit that the duty of support was imposed." *Id.* In short, the court did not "see much benefit to imposing a duty to mitigate on a sponsored immigrant" relative to the costs. *See id.* at 422–23. The cases Syed relies on, in contrast, presume a duty to mitigate exists. *See, e.g., Naik*, 944 A.2d at 717 (stating without analysis that "the sponsored immigrant is expected to engage in gainful employment, commensurate with his or her education, skills, training and ability to work in accordance with the common law duty to mitigate damages"); *see also Asilonu v. Asilonu*, 550 F. Supp. 3d 282, 293 (M.D.N.C. 2021) (analyzing similar cases).

The Seventh Circuit's approach is most consistent with statutory text and the objective of preventing the admission of immigrants who might become a public charge. *See Belevich*, 17 F.4th at 1053 ("The express purpose of this statutory scheme is to prevent admission to the United States of any immigrant who 'is likely at any time to become a public charge.'" (citing 8 U.S.C. § 1182(a)(4)(A))). In the absence of guidance from a higher court, we follow the Seventh Circuit and conclude there is no duty to mitigate. *See Wenfang Liu*, 686 F.3d at 422–23; *accord Asilonu*, 550 F. Supp. 3d at 293–94 (concluding traditional defenses, including mitigation, do not apply in I-864 context); *Li Liu v. Kell*, 299 F. Supp. 3d 1128, 1133 (W.D. Wash. 2017) ("The federal law underlying the I–864 Affidavit clearly specifies the instances in which the support obligation can be avoided . . . . [n]one of the criteria are met by an immigrant's willful failure to seek employment."); *In re Marriage of Kumar*, 220 Cal. Rptr. 3d 863, 872 (2017) (holding "that an immigrant spouse seeking to enforce the support obligation of an I–

23

864 affidavit has no duty to seek employment to mitigate damages."); *Zhu v. Deng*, 794 S.E.2d 808, 812–13 (2016) (same).

We overrule Syed's fifth issue.

*Sufficiency of the Evidence*

Syed argues in his sixth issue that there is insufficient evidence that Maheen's income fell below 125% of the poverty level. To fulfill his obligation, Syed would have had to pay $1,256.25 per month from July 2017 to January 2019, $1,301.04 from January to December 2019, and $1,329.17 from January to July 2020, when he began paying temporary spousal support. Maheen testified that she did not work after coming to the United States and needed to borrow money from her family to make ends meet after separating from Syed. Syed casts doubt on whether that support qualifies as loans because there was "no corresponding paperwork and no consequence for nonpayment" but presents no new arguments regarding why those sums constitute income for these purposes. We conclude there is legally and factually sufficient evidence that Maheen's income fell below the statutory threshold at all relevant times.

We overrule Syed's sixth issue.

**Standard Possession Order**

Syed argues in his seventh issue that the district court abused its discretion by deviating from the standard possession order.

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code § 153.002. There is a rebuttable presumption that the standard possession order "provides reasonable minimum possession of a child for a parent named as a possessory

conservator or joint managing conservator" and "is in the best interest of the child." *Id.* § 153.252. The trial court may deviate from the standard possession order if necessary for the child's best interest. *See id.* § 153.256; *In re K.S.*, 492 S.W.3d 419, 429 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In deviating from the standard possession order, the trial court must consider "the age, developmental status, circumstances, needs, and best interest of the child"; "the circumstances of the managing conservator and of the parent named as a possessory conservator"; and "any other relevant factor." Tex. Fam. Code § 153.256.

The standard possession order sets the minimum possessory rights of the parent who does not have the right to establish the child's primary residence. *See id.* § 153.312 (standard possession order for parents who live less than 100 miles apart). Section 153.317 provides that "the court shall alter the standard possession order" to allow for an expanded period of possession "unless the court finds that the election is not in the best interest of the child." *Id.* § 153.317(a). Here, the district court found that the expanded possession order is not in Z.K.'s best interest and that Syed will have possession under the standard possession order until February 2026. It also modified the standard possession order regarding summer possession. The standard possession order provides that upon proper notice to the other parent, the conservator who does not establish the child's primary residence shall have possession of the child for thirty days during the summer, "to be exercised in not more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6 p.m. on each applicable day." *Id.* § 153.312(b)(2)(A). Absent proper notice, the conservator "shall have possession of the child for 30 consecutive days beginning at 6 p.m. on July 1 and ending at 6 p.m. on July 31." *Id.* § 153.312(b)(2)(B). The divorce decree provides that Syed may not opt for expanded possession, and if Syed fails to give notice contemplated by Section

25

153.312(b)(2), he will have possession from July 1–July 8 and July 15–July 23 of each year rather than for thirty consecutive days.

The district court made the following findings in support of its ruling:

a. The Court finds by a preponderance of the evidence that there is a history or pattern of family violence and rendered a possession order that is designed to protect the safety and welfare of the child and Syeda Kazmi, the victim of family violence pursuant to Tex. Fam. Code §§ 153.004(d)(1); (d-l).

b. The child's very young age at the time the parties separated as well as at the time the divorce was granted.

c. The contemplated distance between the parties' residence, which is necessary for the completion of Syeda Kazmi's education, which the Court finds to be in the best interest of the child.

d. At the time of marriage Syed Kazmi knew that Syeda Kazmi would need to complete her education to obtain her medical license in the United States and relocate from Austin, Texas in order to do so.

e. The Court finds that that § 153.317 election is not in the best interest of the child until the child turns 8.

f. The Court finds that it is in the best interest of the child to deviate from the standard possession order presumption until the child turns 8 pursuant to Tex. Fam. Code § 153.252 (1) and (2).

Based on these findings, the district court concluded that the modified possession schedule "is developmentally appropriate and in the best interest of the child." Syed argues that the record does not support the family-violence findings, the deviation from the standard possession order "has no bearing" on the welfare of Maheen or Z.K., and the remainder of the record conclusively shows that an expanded summer possession is in Z.K.'s best interest. Maheen argues that there was sufficient evidence to support the district court's ruling.

We agree with Maheen. Maheen testified at trial that Syed was physically and sexually abusive until she permanently moved out of the marital residence; Syed denied the

26

abuse and Iffat testified to never observing any of it. Syed argues that Maheen's testimony is not credible but acknowledges that because "this Court has stated that it will not adjudge witnesses' credibility or act as a second factfinder when reviewing custody determinations," Syed is "stuck" with the district court's findings. He is correct that we must defer to the district court's determination that Maheen's testimony was credible. *See Altice*, 668 S.W.3d at 410 (trier of fact "is the sole judge of the credibility of witnesses and the weight to be given their testimony"); *4922 Holdings*, 625 S.W.3d at 325 (reviewing court "may not pass upon the witnesses' credibility or substitute our judgment for that of the fact finder"). Crediting her testimony as we must, we conclude that the evidence is sufficient to support the district court's finding by a preponderance of the evidence that there is a history of family violence.

Even if Syed was correct that there is insufficient evidence to support the findings of family violence, the record supports the others. Maheen testified Syed saw Z.K. "seven or eight times" in the first year of his life. After the mediated settlement agreement, Syed began building up to more possession time, beginning with supervised visits for six weeks, then to two-hour unsupervised visits, and then to overnight stays on the weekends. Maheen testified that Z.K. had trouble transitioning to Syed's home for the unsupervised visits because he did not know Syed very well. She also described concerns about eczema and rashes on Z.K. when he returned from longer visits with Syed. The district court also considered Maheen's testimony that she may need to relocate from Austin to complete her education. Although Syed's evidence could support awarding an expanded standard possession schedule, that does not render the evidence supporting the order legally or factually insufficient. *See HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021) ("A trial court does not abuse its discretion when basing a decision on conflicting evidence.").

27

We conclude sufficient evidence supports the district court's departure from the standard possession order and we overrule Syed's seventh issue.

**Child Support**

Syed argues in his eighth issue that the district court abused its discretion in awarding Maheen $14,975 in retroactive child support because the record supports a lesser amount.

Upon proper request, a trial court shall grant a cumulative money judgment for unpaid child support arrearages. Tex. Fam. Code § 157.263(b). "In calculating child-support arrearages, the trial court's discretion is very limited." *White v. White*, No. 03-21-00323-CV, 2022 WL 2542004, at *2 (Tex. App.—Austin July 8, 2022, no pet.) (mem. op.) (citing *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). "The trial court can award certain offsets and credits but has no discretion to forgive or decrease a past child-support obligation." *Walker v. Walker*, 642 S.W.3d 196, 211 (Tex. App.—El Paso 2021, no pet.); *see* Tex. Fam. Code § 157.263(b-3).

The district court admitted a spreadsheet prepared by Maheen stating the support Syed owed each month between February 2018 and January 2019. It states that Syed owed a total of $18,720 for that period, had paid $3,745, and proposed a retroactive judgment of $14,975. Syed argues that the district court abused its discretion by ignoring undisputed evidence that he paid an additional $6,455.63 in support—mostly to cover Z.K.'s medical expenses—during the child's first year. As proof, he relies on his affidavit attached to his motion for reconsideration. Maheen responds that we may not consider Syed's affidavit because

28

it was not properly before the district court and, even if it was, that the district court was not required to credit Syed for the additional support.

Syed's affidavit is properly before us because Syed submitted it before the district court rendered judgment and the district court made a finding of fact that it considered the affidavit in rendering judgment. *See In re Thetford*, 574 S.W.3d 362, 365 n.7 (Tex. 2019) (orig. proceeding) ("In determining whether a trial court abused its discretion, a reviewing court is generally bound by the record before the trial court at the time its decision was made."); *Iraan-Sheffield Indep. Sch. Dist. v. Kinder Morgan Prod. Co. LLC*, 657 S.W.3d 525, 529 (Tex. App.—El Paso 2022, pet. denied) ("An appellate court may only consider the record as it appeared before the trial court at the time the court made the decision in question."). But the affidavit is not uncontradicted. Syed testified at trial that he provided only the child support amounts listed in the spreadsheet. The district court implicitly resolved the conflict between Syed's testimony and the affidavit by concluding that his testimony was more credible, and we defer to that determination. *See Altice*, 668 S.W.3d at 410 (trier of fact "is the sole judge of the credibility of witnesses and the weight to be given their testimony"); *4922 Holdings*, 625 S.W.3d at 325 (reviewing court "may not pass upon the witnesses' credibility or substitute our judgment for that of the fact finder"). Applying the appropriate standards of review, we conclude there is legally and factually sufficient evidence to support the judgment of $14,975 in retroactive child support.

Finding no abuse of discretion, we overrule Syed's eighth issue.

**Payment Deadlines**

Syed argues in his ninth issue that it was error to set payment deadlines that predate the judgment. The district court signed the decree of divorce on March 7, 2022. The decree provides that Syed's obligation to pay monthly spousal and child support began on March 1, 2021; payment of the attorney's fees judgment was due September 1, 2021; his first monthly payments on the child support, spousal support, and fraud judgments were due October 1, 2021; and payment of the vehicle-repair award was due by December 31, 2021. Syed argues that this was error because it made "compliance impossible and began the premature accrual of interest." Maheen responds that there was no error here because Syed was "well aware that he was ordered to make support payments and monetary judgments after the oral rendition of the ruling in February 2021, but chose not to do so."

We agree with Syed. A court's judgment is its announcement of the resolution of the issues in a lawsuit and is rendered "when the trial court officially announces its decision in open court or by written memorandum filed with the clerk." *S&A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995). "A trial court renders judgment orally when it announces rendition as a present act and not as an 'intention to render judgment in the future.'" *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) (quoting *Leal*, 892 S.W.2d at 858). In the case of an oral rendition, "the judgment becomes effective immediately; the signing and entry of the judgment are only ministerial acts." *In re A.E.M.*, 455 S.W.3d 684, 694 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969)). The judgment set the payment deadlines as if the district court's announcement at the conclusion of trial was an oral rendition of judgment. While the district court announced its resolution of the main issues in the case and asked the parties to prepare a draft decree, it also stated that Syed

30

would not be required to satisfy the judgments immediately and asked the parties to include a payment schedule in the draft decree. Even though the district court announced some of its merits rulings, its words do not reflect an intent to render a "full, final, and complete" judgment at that time. *See Leal*, 892 S.W.2d at 858. We therefore conclude the district court abused its discretion by imposing payment deadlines based on the date of the oral announcement. We sustain Syed's ninth issue.

**Vehicle Repair Award**

Syed argues in his tenth issue that there is insufficient evidence to support the vehicle repair award. The district court awarded Maheen the 2014 Chrysler and $2,220 for "maintenance" of the vehicle. Syed argues that there is no evidence that the vehicle needed maintenance. Maheen responds that her inventory, which the district court admitted into evidence, "shows a negative value of $2,200.00 associated with the vehicle." Another column, however, reads "Need updated debt balance." There is no evidence that the 2014 Chrysler requires $2,220—or any amount—in maintenance.

Maheen argues that the district court's "intent in awarding Maheen the vehicle and the payment of $2,200.00 was to make her whole, whether or not it was associated with the debt on the vehicle or maintenance for the vehicle." As proof, she relies on an exchange during the hearing on Syed's motion to reconsider where Syed had challenged several aspects of Maheen's proposed decree. In response to a question from Syed's counsel about the vehicle, the trial judge stated that she "certainly intended that Mr. Kazmi take the debt on the car. If—if there wasn't a ruling on that, that was the intention of the Court." Even if the trial judge intended to require Syed to pay $2,200 to clear a debt on the vehicle, that intent does not control.

31

"A trial court's oral pronouncements are often tentative, and a trial court is free to modify its oral pronouncement in its written decision without hearing additional evidence." *Stillwell v. Stillwell*, No. 03-17-00457-CV, 2018 WL 5024022, at *6 (Tex. App.—Austin Oct. 17, 2018, pet. denied) (mem. op.). Consequently, if there is an inconsistency between the trial court's oral pronouncement at the hearing and its subsequent written judgment, the written judgment controls. *See id.*; *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 657 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Maheen may not rely on the trial judge's oral pronouncement to modify the award of $2,220 for maintenance. *See Stillwell*, 2018 WL 5024022, at *6; *Heritage Gulf Coast Props.*, 416 S.W.3d at 657.

We conclude the district court abused its discretion by awarding Maheen $2,220 for maintenance of the vehicle without evidence that it required maintenance. We sustain Syed's tenth issue.

**Attorney's fees**

Syed argues in his eleventh issue that the district court abused its discretion because there is insufficient evidence to support the full award of $53,255.70 in attorney's fees. He contends that the record supports an award of $26,547.45. *See* Tex. Fam. Code § 106.002 ("In a suit under this title, the court may render judgment for reasonable attorney's fees and expenses . . . .").

When a litigant "wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Both elements are questions of fact to be determined by the trier of fact. *Id.* The trier of fact first "determine[s] the

32

reasonable hours spent by counsel in the case and a reasonable hourly rate for such work" and "then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar." *Id.* at 494 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). Sufficient evidence "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id*. at 498. The base lodestar calculation, when supported by sufficient evidence, is presumed to "reflect[ ] the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id*. at 499.

Maheen's counsel, Carlos Salinas, testified in support of her request for fees, and the district court admitted a spreadsheet prepared by Salinas reflecting Maheen's current and anticipated fees and costs with attached invoices. The spreadsheet lists a gross amount of $55,755.70 in fees and expenses (representing $53,255.70 in attorney's fees and a $2,500 expert witness fee) and states that Syed had paid $13,000 and that there was $42,755.70 remaining. Salinas testified that the spreadsheet is accurate and that his fees are reasonable. Syed argues that the district court should have reduced the award by $13,000 and that Maheen failed to establish that $11,456.25 of the remaining fees were reasonable and necessary. Maheen responds that we must uphold the entire award because the district court could have considered the "entire record and the common knowledge of the participants as lawyers and judges." *See In re Moore*, 511 S.W.3d 278, 288 (Tex. App.—Dallas 2016, orig. proceeding). Thus, it is a "reasonable inference to draw from the record is that the trial court was familiar with the rates and reasonableness of fees." *See id.*

33

We agree with Syed. Maheen relies on authorities where the reviewing court stated that, in addition to evidence provided by the claimant, the trial court may also consider the entire record and the common knowledge of the lawyers and judges in evaluating a request for a specific amount of fees. *See, e.g.*, *In re Moore*, 511 S.W.3d at 285 (party moved for $52,500 in fees); *Keith v. Keith*, 221 S.W.3d 156, 170 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (party's attorney testified that his contingent appellate fees would be "in the vicinity of $20,000"). While Maheen initially sought $55,755.70 in fees and expenses, her attorney testified at trial that he was only owed $42,755.70 because Syed had already satisfied $13,000 of the gross amount. There is no evidence that Maheen owed her counsel $53,255.70 following that payment. Although trial courts may "draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorney's fees," *McMahon v. Zimmerman*, 433 S.W.3d 680, 693 (Tex. App.—Houston [1st Dist.] 2014, no pet.), that does not permit a court to increase an award of fees with no support in the record,[12] *see Rohrmoos Venture*, 578 S.W.3d at 501–02.

We reach the same conclusion regarding Syed's challenge to the $11,456.25 in fees and expenses. The spreadsheet prepared by Salinas states the name of each attorney who worked on the case, their hourly rate, the total hours of work performed and fees incurred,

---

[12] Maheen also argues that Salinas' testimony could have been conclusory because Syed had an opportunity to cross-examine him but did not. She cites *Garcia v. Gomez*, where the supreme court held that an attorney's cursory testimony that his fee was reasonable is "some evidence" to support the fee because "the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee." 319 S.W.3d 638, 641 (Tex. 2010). The supreme court later explained that *Garcia* arose in a different context and "should not be read, in any way, as a guiding statement on the standard for whether evidence is legally sufficient to support a fee-shifting award of attorney's fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497 (Tex. 2019); *see El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012) (also distinguishing *Garcia*).

broken down by each month. Maheen attached redacted invoices containing descriptions of the work and who performed it, the timekeeper, the hours worked, when the work was completed, and the total amount due. Maheen included invoices for every month reflected in the spreadsheet except for January and February of 2021, a total of $11,465.25 in fees for which there was no descriptive invoice. The only evidence supporting the reasonableness and necessity of those fees is the spreadsheet and Salinas's testimony, neither of which detail the services performed or what constitutes a reasonable time to perform those services. We conclude the evidence is legally insufficient to support the award of $11,465.25 in fees for January and February of 2021. *See El Apple I*, 370 S.W.3d at 763 (overturning fee award because neither attorney who testified specified "how the 890 hours they spent in the aggregate were devoted to any particular task or category of tasks").

In sum, we conclude there is insufficient evidence to support $24,465.25 of the $53,255.70 in attorney's fees and expenses. "[W]hen there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009). In such a case, "we may either suggest a remittitur or remand to the trial court for a new trial." *DeNucci v. Matthews*, 463 S.W.3d 200, 215 (Tex. App.—Austin 2015, no pet.). "The party prevailing in the trial court should be given the option of accepting the remittitur or having the case remanded." *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987). Accordingly, we suggest a remittitur of $24,465.25. We therefore reform the award of attorney's fees to $28,799.45 conditioned on Maheen filing a remittitur within thirty days of the date of this opinion. *See* Tex. R. App. P. 46.3 ("If the remittitur is timely filed, the court must reform and

35

affirm the trial court's judgment in accordance with the remittitur. If the remittitur is not timely filed, the court must reverse the trial court's judgment."). We sustain Syed's eleventh issue.

## CONCLUSION

We reverse the award of $2,220 for maintenance of Maheen's vehicle and render judgment that she take nothing on that claim; we reform the award of attorney's fees to $28,799.45 conditioned on Maheen filing a remittitur within thirty days of this opinion and, as reformed, affirm the judgment except for the payment deadlines. If no remittitur is filed, we will reverse the district court's award of attorney's fees and remand for a new trial on that issue. We reverse the portion of the decree setting payment deadlines that predate the signing of the decree and remand for the district court to set new deadlines.

_____
Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Reformed and, as Reformed, Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: November 17, 2023

36